## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 3:08-CR-235** |
| | : | |
| **v.** | : | **(Judge Neary)** |
| | : | |
| **JOHN NEW, A/K/A MAGDALENE** | : | |
| **NEW** | : | |
| | : | |
| **Defendant** | : | |

### MEMORANDUM

Plea agreements bind the parties and constrain the court. As with other contracts, they come with benefits and burdens for both the government and the defendant. This is especially true of plea agreements under Federal Rule of Criminal Procedure 11(c)(1)(C), wherein the parties "agree that a specific sentence or sentencing range is the appropriate disposition of the case [.]"

More than sixteen years ago, Magdalene New, formerly known as John New, pleaded guilty to receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) pursuant to a Rule 11(c)(1)(C) plea agreement (Doc. 23). The agreement contained an appellate waiver. (Id. ¶ 24). The court accepted the binding plea agreement, and accordingly, New was sentenced to 84 months imprisonment followed by a lifetime of supervised release. (Doc. 37).

New now moves for early termination of her supervised release, (Doc. 40), which the probation office supports but the government opposes. (Doc. 42). While the court is sympathetic to New's circumstances, it is constrained by precedent to

deny her motion because she waived the right to bring it by entering into the plea agreement.

I.    **Factual Background & Procedural History**

In June 2008, a federal grand jury indicted New on one count of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2). (Doc. 1). In January 2009, New pleaded guilty pursuant to a Rule 11(c)(1)(C) plea agreement which stipulated, in relevant part, to an 84-month term of imprisonment and a lifetime of supervised release. (Doc. 23 ¶ 12). The plea agreement also contained the following appellate waiver:

> 24. Appeal Waiver. The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the conviction and sentence imposed. Acknowledging all of this, the defendant knowingly waives the right to appeal any conviction and sentence imposed in accordance with the terms of the plea agreement, on any and all grounds set forth in Title 18, United States Code, Section 3742 or any other grounds, constitutional or non-constitutional, including the manner in which that sentence was determined in light of United States v. Booker, 125 S. Ct. 738 (2005). The defendant also waives the defendant's right to challenge any conviction or sentence or the manner in which the sentence was determined in any collateral proceeding, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The defendant further acknowledges that this appeal waiver is binding only upon the defendant, and that the United States retains its right to appeal in this case.

(Id. ¶ 24).

New was released from prison and began her term of supervised release on September 17, 2015. It is undisputed that New has complied with the terms of her supervised release over the past ten years. (Doc. 40 ¶ 5; Doc. 42 at 14-15 (implicitly

conceding New has no violations of her terms of supervised release)). On August 5, 2025, New filed a motion for early termination of supervised release. (Doc. 40).[1]

New requests early termination so that she may legally change her name from John New to Magdalene New, which she currently cannot do due to Pennsylvania's Name Change Statute. See 54 Pa. C.S. 702(c)(1)(i) (prohibiting courts from ordering a name change for a person convicted of a felony who is still subject to the probation or parole jurisdiction of any court). The government opposes the motion. (Docs. 40 ¶ 9; 42). The motion is fully briefed, and the court held a hearing on New's motion on October 16, 2025, pursuant to Rule 32.1(c)(1). (Docs. 41, 42, 45, 46).

## II.  __Legal Standard__

Title 18 U.S.C. § 3583(e)(1) provides district courts with the authority to modify a defendant's term of supervised release. "A court may terminate a term of supervised release where, in addition to considering the relevant factors under 18 U.S.C. § 3553(a), the court determines that the defendant has served one year of supervised release and 'it is satisfied that [early termination] is warranted by the conduct of the defendant released and the interest of justice.'" United States v. Mabry, 528 F. Supp. 3d 349, 352 (E.D. Pa. 2021) (quoting United States v. Melvin, 978 F.3d 49, 52 (3d Cir. 2020)). "[A] district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination."

---

[1] This motion was filed by New following a recommendation submitted to the court via email by the probation office requesting an early termination to New's term of supervised release.

3

Melvin, 978 F.3d at 52. Where the government opposes a defendant's motion to terminate or modify the term of supervised release, "the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation." FED. R. CRIM. P. 32.1(c)(1).

## III. <u>Discussion</u>

The government raises three arguments in opposition to New's motion. (Doc. 42). First, it argues New waived her right to present this motion due to the plea agreement's waiver prohibiting New from challenging her sentence in "any collateral proceeding." (Doc. 23 ¶ 24; Doc. 42 at 3-6). Second, it maintains the court should honor the bargained-for terms of the Rule 11(c)(1)(C) plea agreement, which contemplated a lifetime of supervised release and a sentence of 84 months, which was a significant reduction from New's guidelines imprisonment range of 108-135 months. (Doc. 42 at 6-12). Third, it contends the 3553(a) factors weigh in favor of denying New's motion, "especially the nature and circumstances of the offense and the need to ensure the protection of young children," which it argues should be the court's primary consideration, not the burden of the supervised release on New. (Id. at 12-16).

It is axiomatic that "[a] criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." United States v. Mezzanatto, 513 U.S. 196, 201 (1995). This includes those protections set aside in an appellate waiver. United States v. Rivera, 62 F.4th 778, 784 (3d Cir. 2023) (citing United States v. Khattak, 273 F.3d 557, 561 (3d Cir.

4

2001)). The Third Circuit "will enforce an appellate waiver and decline to review the merits of an appeal where [it] conclude[s] (1) that the issues [the defendant] pursues on appeal fall within the scope of his appellate waiver and (2) that he knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would work a miscarriage of justice." United States v. Grimes, 739 F.3d 125, 128-29 (3d Cir. 2014) (quoting United States v. Wilson, 707 F.3d 412, 414 (3d Cir. 2013)).

To determine whether a defendant's challenge falls within the scope of an appellate waiver, courts turn to the "well-established principle that plea agreements, although arising in the criminal context, are analyzed under contract law standards." United States v. Goodson, 544 F.3d 529, 535 n.3 (3d Cir. 2008) (cleaned up). Like language in any other contractual provision, language in a plea agreement is afforded its "ordinary meaning" and should not be stretched beyond "normal usage." United States v. Damon, 933 F.3d 269, 273, 275 (3d Cir. 2019). Furthermore, the language in an appellate waiver "must be 'strictly construed.'" United States v. Corso, 549 F.3d 921, 927 (3d Cir. 2008) (quoting Khattak, 273 F.3d at 562). Because the government wields tremendous power in plea negotiations, "any ambiguities in a plea agreement must be construed against the government." United States v. Williams, 510 F.3d 416, 422 (3d Cir. 2007) (citing United States v. Floyd, 428 F.3d 513, 516 (3d Cir. 2005)).

The Third Circuit's decision in Damon is controlling. 933 F.3d 269 (3d Cir. 2019). The defendant in that case entered into a plea agreement which contained the following waiver:

> Ronald Damon knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 33.

Id. at 271. The district court denied Damon's motion for early termination of supervised release, holding this waiver provision precluded Damon from pursuing the motion. Id. at 271-72.

On appeal, the Third Circuit upheld the district court's denial. First, it noted Damon's sentence encompassed both his term of imprisonment as well as his term of supervised release. Id. at 273-74. Second, the court concluded the plea agreement waived Damon's right to file any motion or appeal that "challenges the sentence imposed." Id. at 274. That is because the plain language meaning of "challenges" typically means "to dispute or call into question." Id. (quoting BLACK'S LAW DICTIONARY 279 (10th ed. 2014)). The Damon court reasoned his "motion does just that, questioning his original sentence by seeking to shorten the term of his supervised release. By its very nature, it is a challenge to the sentence imposed." Id. Therefore, the court held Damon waived his right to bring his motion, and that so holding would not "present[] a miscarriage of justice." Id. at 275. To hold otherwise would allow defendants "an end run around the waiver." Id. (quoting Wilson, 707 F.3d at 415 n.2).

District courts within this Circuit have differed in applying Damon. Of the 28 cases this court found on this issue in the context of a motion for early termination

of supervised release,[2] the majority have deemed defendants with plea agreements containing similar or identical waivers to the waiver in <u>Damon</u> to have waived challenges to the terms of their supervised release. <u>See</u> <u>United States v. Majid</u>, No. 21-CR-325, 2025 WL 2621866 (D.N.J. Sept. 11, 2025); <u>United States v. Truesdale</u>, No. 16-CR-369, 2025 WL 2051122 (D.N.J. July 16, 2025); <u>United States v. Duran</u>, No. 22-CR-332, 2025 WL 1839489 (E.D. Pa. July 3, 2025); <u>United States v. Kesten</u>, No. 23-CR-820, 2025 WL 1531290 (D.N.J. May 29, 2025); <u>United States v. Snyder</u>, No. 10-CR-427, 2025 WL 1534960 (E.D. Pa. May 29, 2025); <u>United States v. Jensen</u>, No. 19-CR-619, 2025 WL 885625 (D.N.J. Mar. 21, 2025); <u>United States v. Kesten</u>, No. 23-CR-820, 2025 WL 388720 (D.N.J. Feb. 4, 2025); <u>United States v. Sterre</u>, No. 15-CR-441, 2024 WL 1376038 (D.N.J. Apr. 1, 2024); <u>United States v. Haring</u>, No. 16-CR-301, 2023 WL 7489993 (D.N.J. Nov. 13, 2023); <u>United States v. Bautista</u>, No. 15-CR-351, 2023 WL 7019151 (D.N.J. Oct. 24, 2023); <u>United States v. Whitehead</u>, No. 10-CR-866, 2023 WL 4686246 (D.N.J. July 21, 2023); <u>United States v. Alber</u>, No. 14-CR-491, 2022 WL 1683710 (D.N.J. May 25, 2022); <u>United States v. Rosado</u>, No. 17-CR-280, 2022 WL 1591746 (D.N.J. May 18, 2022); <u>United States v. Zerega</u>, No. 13-CR-123, 2022 WL 980679 (D.N.J. Mar. 30, 2022); <u>United States v. Spencer</u>, No. 09-CR-806, 2022 WL 676924 (D.N.J. Mar. 7, 2022); <u>United States v. Edwards</u>, No. 11-CR-737, 2022 WL 341199 (D.N.J. Feb. 3, 2022); <u>United States v. Wadlington</u>,

---

[2] Two courts did not reach the waiver issue because the defendants' motions failed on the merits. <u>See</u> <u>United States v. Beauvil</u>, No. 19-CR-180, 2024 WL 86422 (D.N.J. Jan. 8, 2024); <u>United States v. Freehauf</u>, No. 15-CR-116, 2023 WL 279247 (D.N.J. Jan. 18, 2023).

No. 12-CR-457, 2022 WL 206173 (E.D. Pa. Jan. 24, 2022); United States v. Lui, No. 10-CR-437, 2021 WL 242476 (E.D. Pa. Jan. 22, 2021).

The minority cases distinguished Damon where the language of the defendants' appellate waivers was more narrow—for example, by not including a waiver on filing "any other writ or motion" challenging the sentence imposed—than the waiver language in the Damon plea agreement. See United States v. Arrington, No. 14-CR-104, 2024 WL 3648672 (D.N.J. Aug. 5, 2024); United States v. Pearson, No. 04-CR-433, 2024 WL 1936226 (E.D. Pa. May 1, 2024); United States v. Canalichio, No. 06-CR-641, 2024 WL 1936227 (E.D. Pa. May 1, 2024); United States v. Baez, No. 11-CR-240, 2024 WL 1743752 (E.D. Pa. Apr. 23, 2024); United States v. Gonzalez, No. 11-CR-739, 2024 WL 1743754 (E.D. Pa. Apr. 22, 2024); United States v. Tarboro, No. 08-CR-323, 2023 WL 3821812 (E.D. Pa. June 5, 2023); United States v. DeSanto, No. 20-CR-00206, 2022 WL 686380 (D.N.J. Mar. 7, 2022); United States v. Fluellen, No. 09-CR-497, 2022 WL 309159 (E.D. Pa. Feb. 2, 2022); United States v. Mabry, 528 F. Supp. 3d 349 (E.D. Pa. 2021). One court distinguished Damon where the motion was brought by a probation officer, who is not bound by a plea agreement, not the defendant. See United States v. Harris, No. 3:14-CR-434, 2021 WL 4342091 (D.N.J. Sept. 23, 2021).

On its face, New's appellate waiver bears some similarities to the minority cases. Like those cases, it does not include the "any other writ or motion" qualifier included in the Damon plea agreement. But New's appellate waiver contains a bar on challenges "including but not limited to a motion brought under Title 28, United

States Code, Section 2255." (Doc. 23 ¶ 24). Thus, the plea agreement encompasses at least one motion—a motion to vacate under 28 U.S.C. § 2255—and the "including but not limited to" language suggests a broader prohibition on motions which "challenge any conviction or sentence or the manner in which the sentence was determined in any collateral proceeding." (Id.).

To further understand why, consider the waiver's key component parts: (1) "challenge," (2) "sentence," (3) "collateral," and (4) "proceeding." First, to "challenge" is "[t]o dispute or call into question." See *Challenge*, BLACK'S LAW DICTIONARY (12th ed. 2024); Damon, 933 F.3d at 274. Second, it is well-established that a term of supervised release is part of New's "sentence." See Damon, 933 F.3d at 273-74. Third, "collateral" means, among other things, "[s]upplementary." See *Collateral*, BLACK'S LAW DICTIONARY (12th ed. 2024). Fourth, a proceeding is, among other things, "[a]ny procedural means for seeking redress from a tribunal or agency." See *Proceeding*, BLACK'S LAW DICTIONARY (12th ed. 2024).

These authorities make clear that New is calling her sentence into question in a supplementary proceeding. Just like in Damon, New's "motion . . . question[s] [her] original sentence by seeking to shorten the term of his supervised release. By its very nature, it is a challenge to the sentence imposed." Damon, 933 F.3d at 274.

New also highlights that the probation office requested her early termination, but this is a distinction without a difference. Regardless of the probation office's actions, New moved to terminate her term of supervised release. (Doc. 40). As

established above, New waived the right to file this motion upon entering into her plea agreement.

Since New waived her right to seek this motion in her plea agreement and it is undisputed "that [she] knowingly and voluntarily agreed to the appellate waiver," the court must enforce the waiver "unless . . . enforcing the waiver would work a miscarriage of justice." Grimes, 739 F.3d at 128-29. The court appreciates New's desire to change her legal name, which Pennsylvania law prevents her from doing while she is on federal supervision. 54 Pa. C.S. 702(c)(1)(i). And the court credits New's testimony that this prohibition has caused her "ongoing anxiety, mental distress, physical stress symptoms, social stigma, and very real safety risks[.]" (Doc. 48, 10/16/25 Hearing Tr. 14:20-15:3). But this does not rise to a miscarriage of justice. See Khattak, 273 F.3d at 562 (observing that "[t]here may be an unusual circumstance where an error amounting to a miscarriage of justice may invalidate the waiver"). Her lifetime term of supervised release was a negotiated term of her plea agreement.[3] She received the benefits of that plea agreement and must also bear its burdens.[4]

---

[3] Enforcing the appellate waiver here is especially sound because New pleaded guilty pursuant to a Rule 11(c)(1)(C) plea agreement, which negotiated the specific sentence and term of supervised release.

[4] Because New waived her ability to challenge her bargained-for term of supervised release, the court does not reach and takes no position on the government's third argument in opposition, that the 18 U.S.C. § 3553(a) factors caution against terminating New's term of supervised release.

**IV.    <u>Conclusion</u>**

The court is sympathetic to New's circumstances and commends her rehabilitation. But the law requires the court to enforce the terms of her negotiated plea agreement. Because the plea agreement waived her right to seek this motion and she received the benefit of the bargain in signing the plea agreement, New's motion for early termination of supervised release will be denied.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    October 31, 2025